Let an order be entered that Smith be discharged from his arrest.

---

## Case No. 12,969.

### Ex parte SMITH.

[3 Wkly. Law Gaz. 237.]

Circuit Court, S. D. Ohio.  March, 1859.

NATURALIZATION OF ALIENS—JURISDICTION OF PROBATE COURTS.

[The act of 1802 (2 Stat. 155) declares that "every court of record, in any individual state, having common law jurisdiction, and a seal and clerk or prothonotary, shall be considered a district court," and have jurisdiction in matters of naturalization. Held, that the probate courts of Ohio (which by the state constitution are declared to be courts of record), which exercise common law jurisdiction in numerous instances, which have a seal provided by law, and the judges of which are empowered to appoint deputy clerks, are within the statute, and have jurisdiction of such proceedings.]

[Cited in People v. Pease, 30 Barb. 603.]

We have heretofore given the decision of the probate court (see [In re Downs] 2 Wkly. Law Gaz. 278), and subsequently the decision of the district court of Ohio, for Hamilton county, on the question as to the right of the probate court to issue naturalization papers; the district court, Judge Swan presiding, having decided that the probate court had no power to act in such case. See Id. 318. Below we give the opinion of Judge McLean sustaining the jurisdiction of the probate court.

McLEAN, Circuit Justice. Smith, a native of Baden, represents that on the twenty-seventh day of October, 1856, he filed in the probate court, in and for Hamilton county, Ohio, the declaration of his intention to become a citizen of the United States; that he has been a resident of the United States for the term of five years now last past, and of the state of Ohio one year; that he is attached to the principles of the constitution of the United States, and is well disposed to the good order and happiness of the same; and he is ready to comply with all requisites of the act of congress to entitle him to citizenship, and asks for his final certificate.

It appears that upon the 27th of October, 1856, the applicant personally appeared before the judge of probate for the county of Hamilton, in the state of Ohio, and stated himself to be a native of Baden, aged about forty-six years, bearing allegiance to the grand duke of Baden, and that he emigrated from Havre, on the seventeenth day of November, 1852, and arrived at New Orleans on the twenty-fourth day of December of the same year, and that he intends to reside within the jurisdiction of the United States, that he makes report of himself for naturalization and declared on oath that it is bona fide his intention to become a citizen of the United States of America, and to forever renounce and abjure all allegiance and fidelity to every foreign prince, potentate, state and sovereignty whatever, and particularly to the grand duke of Baden; which declaration was duly signed by the said Smith and certified by John Burgoyne, probate judge, and by his deputy, J. M. Clark, under the seal of the state. On the 2d of September, 1856, J. M. Clark was declared to be appointed deputy clerk of the probate court, and commenced his duties as such. And that he was duly acting as such on the 27th of October, 1856, when the above declaration was made by Matthew Smith, of his intention to become a citizen of the United States.

In the case of Chirac v. Chirac, 2 Wheat. [15 U. S.] 259, the supreme court of the United States say, "The power of naturalization is exclusively in congress." But it has been repeatedly held that congress has power to authorize such a jurisdiction to be exercised by a state court. By the third section of the act of congress of April, 1802, it is declared that "every court of record in any individual state, having common law jurisdiction, and a seal and clerk or prothonotary, shall be considered a district court," and have jurisdiction in matters of naturalization. By the constitution of Ohio (article 4, § 7), it is declared, "There shall be established in each county a probate court, which shall be a court of record, open at all times and holden by one judge," etc.; and by the act of March 14, 1853 (Ohio Laws), certain records are required to be kept by the probate court, and "a special record which shall contain a complete record in each cause or matter, of all parties, returns, reports, awards and judgments."

The constitution of the state declares the probate court shall be a court of record. It is not very well perceived how this declaration of the constitution can be disregarded. There are numerous instances in which this court unquestionably exercises a common law jurisdiction. In certain cases appeals lie from inferior tribunals to the court of probate, where a jury is called. And it is provided in certain cases that a trial before a jury in the court of probate shall be had in the same manner as the trial in civil cases in the court of common pleas. And in case of fraud the court of probate may set aside conveyances when made to defraud creditors. It is very properly said by the court of appeals of Kentucky, in Morgan v.

Dudley, 18 B. Mon. 722, that the act of congress which authorizes state courts to admit aliens to become citizens does not describe them as courts of general common law jurisdiction, but as courts having common law jurisdiction. It would be a singular construction of the act of congress to hold that the power of naturalization by the probate court cannot be exercised, unless its jurisdiction be shown to apply to all questions arising at common law. No such rule is sustainable. On the contrary, if the jurisdiction exercised by the probate judge be declared to be a common law power in the constitution, and it is, in fact, an appropriate power to the object specified, there is no room for doubt on the subject. But it is said the probate court must have a seal and clerk, or prothonotary. The seal is provided by law. And every probate judge has power to appoint a deputy clerk or clerks, who shall take the oath, or oaths, required; and the judge is required to take security from them for the faithful performance of the duties of his deputy, or deputies.

It is said in Ex parte Cregg [Case No. 3,-380] that a court of record without any clerk or prothonotary, or other recording officer distinct from the judge, is not competent to receive an alien's preliminary declaration. If this be admitted, it does not affect the question, for the probate judge has authority by law to appoint a deputy clerk or clerks, who are required to make the records; so that there is not only a clerk, but a recording officer duly appointed in the case under consideration.

The objection that the probate judge is his own clerk, and that he cannot discharge the duties of judge and clerk at the same time, is an exceedingly technical objection, and is without substance. The law authorizes the judge of probate to appoint one or more deputy clerks. The deputy clerk discharges his duty under the direction of the judge, and is subject to his order in the same way as a clerk of a court appointed in the ordinary mode by the judge. The duties of the clerks are defined by law, and, this being the case, of what importance is it, whether he is the deputy or principal clerk? In either capacity he acts under the probate judge, and is responsible for the performance of his duties. In Ex parte Gladhill, 8 Metc. (Mass.) 171, the court said: "It might be urged with some plausibility, that if the judge is specially vested by law with the clerical authority, the court has a clerk within the letter and equity of the statute." But the statute of the state has expressly authorized the judge of probate to appoint one or more deputies, and in the language of the supreme court of Massachusetts, above cited, "the requisition in the act of congress, that the court shall have a clerk or prothonotary, means, I think, not that the court shall have an officer denominated clerk or prothonotary: but a recording officer, char-

ged with the duty of keeping a true record of its doings, and afterward of authenticating them."

It has been said that a probate court is a court of ecclesiastical, and not common law, jurisdiction, and is not, therefore, such a court as the act of congress authorizes to naturalize aliens. Strictly speaking, we have no ecclesiastical courts in this country. Such courts in the English law are held by the king's authority, as supreme governor of the church for matters which chiefly concern religion. We have probate and other courts which partake somewhat of the nature of ecclesiastical courts; but they are regulated by statutory provisions and the principles of the common law. It is enough that the constitution of the state of Ohio declares that the "court of probate shall be a court of record," and it is so in fact, and in law, as it appears to me, although some of its powers are not founded on common law.

I think that the probate court has jurisdiction under the act of congress, to naturalize aliens, and that the declaration of Matthew Smith has been made in due form, and that on complying with the remaining requisitions of the act of congress, the final certificate of citizenship may be granted to him.

---

SMITH, Ex parte. See Case No. 2,784.

SMITH, Ex parte. See Case No. 12,993.